Thank you, your honor, and may it please the court, I would like to reserve one minute for rebuttal. Your honor, the district court in this case erred in limiting the scope of Mr. Has The Eagle's expert witness testimony, and as a result the defense was denied the right to present the only defense that was available to Mr. Has The Eagle. This morning I would like to address why the court's limitation on the defense witnesses' testimony on the ground that the testimony would go to the ultimate issue was incorrect. And if I have time I would also like to address why the rulings denied the defense the opportunity to prevent the defense of lack of or diminished capacity defense. The first issue I'd like to address had to do with the court's restriction on the scope of the testimony by Mr. Russell regarding the medication that Mr. Haseagle had been prescribed. The district court found in part that Mr. Russell was not an expert under the Daubert prongs and he limited the scope of testimony on that basis. We believe that the testimony both was relevant under Daubert but also that the defense adequately established that Mr. Russell's proffered testimony would have been reliable under Daubert. Counsel, this is Judge Smith, even if all you say is true, I'm unaware of any evidence that the jury received from which it could reasonably infer that either ADHD or depression could have affected his ability to premeditate his crimes. Can you point to anything in the record that would contravene that? Your Honor, I can't specifically point to evidence in the record to contravene that. Our point is that the jury was not permitted to hear because of the court's ruling. But I guess what I'm getting at is it's a case where the initial point by the trial court, whether he was an expert in basically medical issues, which the court found he was not. He was a social worker without any medical training. But secondly, even if the court was abused its discretion about his defendant's statements regarding the effects of his medication, was that not harmless error under the circumstances since the jury had no evidence from which to infer that either the ADHD or depression could have affected his ability to premeditate his crime. And my response, Your Honor, is not just that he had PTSD or depression or ADHD. The harm comes from the fact that the jury was not given any information that the fact that Mr. Hazegel was not on a number of the medications that he had been prescribed affected his ability to form the requisite mens rea for first degree murder or for the burglary charge. The evidence would have shown, had Mr. Russell been permitted to testify, that Mr. Hazegel was not on a number of these medications at the time of the homicide. But there's a non sequitur there, is there not? I mean, the fact that he was not on the medications, if in fact that was the case, does not necessarily mean that he was unable to infer or to rather to premeditate his crime. It doesn't necessarily lead to that conclusion, Your Honor, but Mr. Russell would have been able to describe that when he's not on the medications, Mr. Hazegel acted impulsively, hyperactively, had a great deal of difficulty in concentrating, could not focus to the point where he was written down by Mr. Russell. But doesn't that get back to the very point that we started out with, which is that in this case, the social worker was that he was a social worker. He had absolutely no medical training at all. And whatever observations he might have about taking or not taking medications would be those of a layperson. Well, in fact, trial counsel at one point told the trial judge that Mr. Russell was in some sense a fact witness because he was going to be testifying as to his observations of Mr. Hazegel when he was on the medication and when he was off. And when he was not on his medication, he acted in a way that would have permitted the jury to consider whether he was of premeditation to where he could actually reflect on his decision and with a cool mind act on his decision. As he was not on medication, if he was acting impulsively or was unable to concentrate, that would run contrary to the element of premeditation that was necessary for the first degree murder conviction. Counsel, you did have an opportunity or trial counsel had an opportunity to present Russell's testimony to some extent. That is correct, Your Honor. And what I'm wondering about the material that you're now discussing with Judge Smith, it seems to me that he did testify to pretty much everything you've just said, starting at around page supplemental excerpt 467. What specifically was excluded that, in your view, was more different or somehow more important than what was elicited? Your Honor, I don't have that supplemental excerpt in front of me. What I'm basing my argument on is the offer of proof that trial counsel provided to the court at the court's direction in which the court then went through line by line and identified the proper testimony that the defense would not be permitted to present. I guess my point is that my question to you is that the bulk of the discussion was had with Mr. Smith, the difficulty sleeping, all the problems that your client had, and it left open the opportunity to make the argument that you're now making. So I guess I'm not sure how to evaluate the marginal utility of the things that were excluded. Well, Your Honor, it connects with the absence or the inability to testify regarding the effect of the medication that alleviated those symptoms, which she was not on at the time of the incident, but it also goes to the fact that Mr. Russell was not permitted by the court to testify to the fact that if Mr. Hazard Eagle combined alcohol with the prescription medication, that that would cause him to act out on irrational thoughts, and that was another issue of critical importance to the defense that was limited by the judge. Counsel, this is Judge Benitez. Can you tell me how a social worker is qualified to render that kind of opinion or that kind of testimony? Well, I think, Judge, that the basis for the argument lies not just in the offer of proof, which doesn't provide much in terms of Mr. Russell's expertise, but the curriculum vitae that the defense counsel offered, and then the additional representations made by trial counsel to the district court as they were discussing Mr. Russell's expertise, amply supports the determination that the judge's findings were incorrect, and we believe that Mr. Russell, although a social worker, had ample training and experience with which to offer testimony regarding the effect of the mental health-related medications. That was the field in which Mr. Russell was involved for numerous years, and he was an expert based on that experience and should have been permitted to testify in that regard. Thank you, Counsel. You have about a minute left, and if you would like to save it for rebuttal, you may. Your Honor, thank you. I would, unless there are other questions that the court has at this time. I would reserve one minute for rebuttal. I believe there are no more questions at the moment, and we'll hear from the government. Thank you. This is Michael Lahr of the U.S. Attorney's Office in Helena. Welcome. Thank you. May it please the court, the matter before the court pertains to the exclusion of a very limited amount of testimony by the defendant's witness, Ralph Russell. Though the court did question Mr. Russell's qualifications as an expert, as well as the reliability of his conclusions, the critical facet of this case and of the court's decisions, the district court's decisions, were that it did allow him to testify fully on the issues of Mr. Hasley Eagle's mental disorders and the treatment that Mr. Russell conducted with him. Mr. Russell was only limited in regard to the issue of the medications. As was discussed in the brief, there were really just a few medications at issue, two of which he was not on at the time the murders occurred, and one, the geodone that he had just begun. In this case, in the briefing, there was a great deal of discussion regarding the process that was involved by the court. Here, the court found itself in a position of being apprised of potential expert testimony. Just as the proceedings were beginning to unfold, the court, relying on Rule 103 of the Federal Rules of Evidence, which gives the court broad powers to manage its trial proceedings, and specifically discusses the use of offers of proof, it, in fact, once it learned that potential expert testimony was coming in, required the Dependents' Council to file and offer proof. What was the district court's basis for the ruling? Is it clear from the record? It depends on which ruling. I think that certainly the court began with its DOBR obligations, its gatekeeping obligations, which begin with Rule 702. There's no question that the court looked at the qualifications that came into the offer of proof regarding Mr. Russell, that also discussed the limited information in support of his conclusions going to the reliability issue. Beyond that, of course, there were the issues that you had just previously discussed with Mr. Hooks on the Rule 704 inference on the Olson issue, but the court did also discuss what would implicate 403. It discussed prejudice, and, of course, we had the social worker issue as far as statements made to medical providers, which raised the specter of the 803 sub 4 issue as well. I think, on my reading of the record, the court based it primarily on Rule 702 factors and, of course, the 704 factor as well on the inference on the Olson issue, if that answers your question. I think so. Thank you. I think it's important to note that in regard to the offer of proof that it was the defendant's burden to establish the admissibility of the evidence, the court specifically discussed the information that was in the offer of proof, which was somewhat limited. It determined that that information was less than satisfactory to establish a social worker as an expert to discuss the medications issue, and also went on when it discussed the lack of information on dosages, on the amount of time that Hazen Eagle had been on the medications, that it questioned the adequacy of the information to support the conclusions. Again, it is critical to note how much evidence was really excluded by the court's ruling. When all was said and done, as the court has just previously discussed, most of the information which he wanted to discuss about, well, all of the information that he wanted to discuss as to the disorders that he suffered from, the ADHD, the depression, the post-traumatic stress disorder, information as to his suffering from those disorders, information as to what the symptoms were, again, as was just discussed, the lack of focus, the sleeplessness, the paranoia, all of that information came in not only from Dr. Russell, but it was reiterated again through Dr. Lowe, the government's rebuttal witness, who also on cross-examination, as well as on direct, provided a great deal of information about all of this, in addition to those disorders, information was able to come in that he had been diagnosed with bipolar disorder by two government psychiatrists. Virtually anything pertaining to the actual mental disorders themselves was not prevented from coming into evidence. Additionally, as far as the drugs are concerned, as we spoke about the Effexor, the antidepressant, and the Sertera, the drug for the ADHD, though there was to be testimony from Dr. Russell about those, those drugs were both discontinued by November 19th, which is nearly a month before the murders occurred, so their relevance to what is going on on December 17th is highly questionable and limited. The Geodone, which was specifically excluded from Dr. Russell's testimony, did come out through Dr. Lowe. The only things that really could be said about that were the fact that it was an anti-psychotic drug, and that it had been prescribed on December 10th. That is all Russell could have spoken to, and that is all that Dr. Lowe was able to testify to, and so the Geodone was really a watch. Anything they wanted to get in on that did get in. Certainly the court instructed, both on the first-degree murder and felony murder jury instructions, the jury was allowed to hear of the intoxication or mental condition as to limiting his ability in some way to form the requisite intent. If you look at the record and his argument from start to finish, the theme is he was drinking, he was suffering from mental problems, he was anxious. They were not prevented in any way from making a full argument on the diminished capacity defense. Every witness was asked and testified about the alcohol and his appearance. His mother testified about him hearing voices. Both Dr. Lowe and Russell testified about all of his various mental conditions. Virtually nothing, in the end, was kept out. As concerns the 704 issue, the 704 sub B issue regarding the inference on the ultimate issue, it is different in this case, in the defendants' brief, reply brief, they discussed the Cohen case, Finley, Morales. Counsel, I don't actually even understand that ruling, to be honest with you. I don't really see what is the ultimate issue that that allegedly went to. I think what the court was concerned about was the precise wording that was included in the offer of proof. That the mixing of alcohol with the medications that has the eagle was on, which at that time would have been just the geodote. First of all, to backtrack, I think there was clearly the 702 issue was the reliability of that conclusion based on the limited... Well, let me just be more specific. The ultimate issue is premeditation, but the opinion didn't really, even in the offer of proof, pertain to premeditation in any particular way. It talked about alcohol being a disinhibitor that allows somebody to act out their irrational thoughts, and that there's an increase in effect of these medications, but there's no opinion suggested in there to my eye as to the issue of premeditation. And I guess, in what way do you think that that ruling is justified? Well, I think it is based, again, on the way it is precisely written in the offer of proof that by mixing these two it will cause him to act out on irrational thoughts, and that it is the acting more than merely the irrational thoughts. I think the case law is fairly specific that merely because a person is subject to irrational thoughts or prone to irrational thinking, certainly, in and of itself, does not defeat the mens rea requirement. I think what concerned the court in this case was the fact that if taken, if credited in whole, it would mean that if you mix the alcohol, which we knew that there was that evening, he was acting out on irrational thoughts. Well, there was some dispute, I thought, about the extent of alcohol use and whether he was in fact intoxicated. I thought that was an issue of fact that would not be resolved by this proposed testimony. I think ultimately, as far as the record was concerned, that you are absolutely correct in that the level of intoxication I think was a matter of some debate and even dispute. Sure, because of the length of time that was involved. Right, and I think that was one of the concerns that the court had was the lack of qualifiers, was it would be impossible for a jury to know how much alcohol was necessary, how much of a dosage of the medications, the time involved from taking the medication and consuming the alcohol, would that make a difference? Again, taken as just a pure formula, that mixing the two without any qualifications, without any variables inserted, will cause him to act out on irrational thoughts, I think was the concern of the court that without more that that was a very problematic conclusion for Mr. Russell to make and could in fact deprive the jury of their province in that decision on the pensoria. Counsel, you have used up your time, but I want to be sure, do any of my colleagues have any questions for the government's counsel? If not, we thank you and we'll return to defense counsel for a further comment. Thank you very much. Thank you, your honors. I'd like to turn to that last point regarding the ultimate issue. The testimony that was proffered that mixing drugs and alcohol would cause Mr. Hazegel to act irrationally did not mandate the jury find that he could act or that he was not acting with the requisite mental element. It would have permitted the jury to reach that inference, but it certainly did not require that. The absence of that testimony went directly to the heart of the defense. The fact that Mr. Hazegel was mentally ill, which the defense was permitted to establish, was not enough. There had to have been some connection drawn. The defense had to show how the mental illness or the lack of medication or the mixing of drugs and alcohol worked to negate the mental state element. It was even more important after the government presented Dr. Lowe, who contradicted much of the defense presentation and in fact said that Mr. Hazegel was nothing more than an anti-social malingerer. So the testimony that was excluded by the court went to the very heart of the defense. And we think that the error certainly was harmful and that it warrants the reversal of the convictions and remand for a new trial. Thank you, counsel. We appreciate both of the arguments. We appreciate your flexibility and the case argued is now submitted. Thank you, Your Honors. Thank you. Thank you very much, Your Honors. And we will stand adjourned for this morning's session.
judges: Benitez, Graber, Smith M.